OPINION OF THE COURT
Sabrina B. Kraus, J.
Background
The underlying summary nonpayment proceeding was commenced by West 109 Realty LLC (petitioner) against Angela Hidalgo (respondent) the rent-stabilized tenant of record, seeking to recover possession of 70 West 109th Street, apartment 24, New York, New York 10025 (subject premises) based on the allegation that respondent failed to pay rent due for the subject premises.
Procedural History
Petitioner issued a three day rent demand dated January 8, 2013, seeking $2,015.34 in arrears, for a period covering October 2012 through January 2013, at a monthly rent of $618.74. The petition is dated January 21, 2013, and the proceeding was initially returnable on February 13, 2013.
Respondent appeared pro se and filed an answer on February 4, 2013, asserting that a portion of the rent sought had already been paid, and that there were repairs necessary in the subject premises. The parties adjourned the proceeding to April 3, 2013, for respondent to obtain counsel.
Respondent obtained counsel, who moved for leave to file an amended pleading on May 9, 2013. The motion was granted on consent. The amended answer asserted various defenses including that the monthly rent sued for by petitioner was unlawful, based on a prior rent reduction order issued by the Division of Housing and Community Renewal (DHCR).
On September 10, 2013, respondent moved for summary judgment and an order dismissing the proceeding. On December 3, *876 2013, the court heard oral argument and on December 10, 2013, after further submissions the motion was submitted and the court reserved decision.
Discussion
Respondent was granted a rent reduction by DHCR in 1990, based on the conditions existing in the subject premises. DHCR reduced respondent’s rent from $282.91 to $245.79 per month. The order issued under docket No. ZDD410069S and provided in pertinent part:
“The legal regulated rent is reduced by the percentage of the most recent guidelines adjustment for the tenant’s lease which commenced before the effective date of this rent reduction. Furthermore, no rent increases may be collected, after the effective date of this rent reduction Order, until a rent restoration Order has been issued.”
The order further provides that “[ujntil the owner files an application and an Order is issued restoring the rent, the owner may not demand or collect any rent increase above the level established herein.”
Pursuant to the rent registrations filed by petitioner from 1990 through 2010, petitioner registered a legal rent reflecting increases every two years per guidelines, but registered the actual rent paid as $245.79. The last registered rent with DHCR which was provided to the court was $609.72, effective in 2009.
The last lease renewal signed by respondent is dated January 2, 2013, for a two-year period through December 31, 2014, at a monthly rent of $255.62. The lease renewal provides that the legal rent for said period is $618.74. The renewal also provides that said rent may be increased or decreased by DHCR. There is no indication as to whether interim renewal leases were offered and signed and neither party has submitted a statement or any documents in reference to same.
On December 6, 2012, DHCR issued an order finding that services had been restored and providing that “[t]he rent is restored to the level in effect prior to the rent reduction order, plus all lawful increases which are collectible from the date of this order” (emphasis added). The effective date of the order is designated as September 1, 2012. The order also provides that “[a]ny arrears due the owner as a result of this order may be paid in equal monthly installments equal to the monthly rent reduction taken.”
*877 Respondent moves for summary judgment based on the third affirmative defense in her answer, which asserts that the monthly rent sued for of $618.74 is an illegal rent, and that the restoration order issued by DHCR limits petitioner to collecting a rent of $282.91, plus the guidelines increase in place after September 1, 2012.
Petitioner asserts that while it was barred from collecting guidelines increases while the rent reduction order was in place, once the rent was ordered restored, the legal collectible rent includes all interim guidelines increases for renewal leases and totals the amount sued for of $618.74 per month.
The motion essentially calls upon the court to interpret the language in the above cited restoration order.[1] Section 2522.1 of the Rent Stabilization Code (9 NYCRR) limits the ways in which the rent may be increased or decreased to the provisions set forth in the code.
Section 2523.4 (a) (1) of the Rent Stabilization Code provides:
“A tenant may apply to the DHCR for a reduction of the legal regulated rent to the level in effect prior to the most recent guidelines adjustment . . . and the DHCR shall so reduce the rent for the period for which it is found that the owner has failed to maintain required services. The order reducing the rent shall further bar the owner from applying for or collecting any further increases in rent until such services are restored or no longer required pursuant to an order of the DHCR.”
Section 2523.3 of the Rent Stabilization Code provides:
“No owner shall be entitled to collect a rent adjustment pursuant to a rent guidelines board order as authorized under section 2522.5 of this Title, until the owner has filed a proper certification as required by section 2523.2 of this Part, nor shall any owner be entitled to a rent restoration based upon a restoration of services until such restoration of services has been determined by the DHCR in a proceeding commenced by an owner’s application to restore *878 rent .... Such restoration shall take effect, where restoration of services has been determined in a proceeding commenced by an owner’s application for rent restoration, in accordance with section 2522.2 of this Title . . . .” (Emphasis added.)
Section 2523.5 (a) of the Rent Stabilization Code requires an owner to offer a tenant a renewal lease “at the legal regulated rent permitted.”
Section 2522.2 of the Rent Stabilization Code provides:
“The legal regulated rent shall be adjusted effective the first rent payment date occurring 30 days after the filing of the application, unless otherwise set forth in the order, or on the effective date of a lease or other rental agreement providing for the rent guidelines board annual rate of adjustments, or upon vacancy or succession as provided in section 2522.8 of this Part.”
There does not appear to be any case directly on point; however, there are cases that discuss other increases not subject to collection during a rent reduction order or rent freeze, which can be collected once the rent is no longer frozen. For example, in 446-450 Realty Co., L.P. v Higbie (30 Misc 3d 71 [2010]), the Appellate Term, First Department held that where the rent of a stabilized tenant had been frozen based on a finding of harassment, once the harassment order was revoked, the landlord was entitled to collect a rent which included increases for renovations done during the period of time when the rent was frozen as well as prospective rent increases.
There is similar legal authority pertaining to maximum base rent (MBR) increases for rent-control tenants. For example, DHCR Policy Statement 90-1 dated February 8, 1990 provides that a rent reduction order for failure to maintain an essential service will bar “collectability” of any subsequent increase in the maximum collectable rent (MCR), but only until a rent restoration order has been issued. Once the restoration order is issued, the interim increases are collectible (see also Matter of Nelson v New York State Div. of Hous. & Community Renewal, 95 AD3d 733 [2012] [MCR increases for periods subsequent to rent reduction order can not be collected until order has been issued restoring rent]; Westmoreland Assoc., LLC v Kispert, 2002 NY Slip Op 50474[U] [2002] [MBR increases granted after rent reduction order was in place not subject to collection while rent reduction order remained in effect, but implying said *879 increases would be collectible once the rent was restored]; Matter of Lowe v State of N.Y. Div. of Hous. & Community Renewal, 3 Misc 3d 1105[A], 2004 NY Slip Op 50427[U] [2004]).
Such an interpretation is also supported by an unreported decision, addressed by both sides in their submissions to the court, 246 Assoc, v Horn (Civ Ct, NY County, index No. 8395/03), issued by Judge Schneider, where the court, primarily relying on DHCR Policy Statement 90-1, held that a rent reduction order only affects the collectibility of subsequent increases, not the legality of said increases.
There is similar legal authority pertaining to major capital improvements (MCIs) and individual apartment improvements (IAIs). For example, in Matter of Zumo Mgt. v State of N.Y. Div. of Hous. & Community Renewal (183 Misc 2d 107 [1999]) the court held that where a landlord made improvements to an apartment after a rent reduction order was in effect, the landlord could collect the higher rent based on said improvements, once the rent was restored. In that case a distinction was drawn between the legal regulated rent and the collectible rent, and the court noted:
“The Rent Administrator . . . determined that although the individual apartment improvement increase would be added to the legal regulated rent, the collectible rent remained frozen . . . until the DHCR issued a rent restoration order. The Rent Administrator also found that the owner was not permitted to collect the vacancy or guideline increases while the rent reduction order remained in effect. The rent, thus, was restored to the full amount, including all legal increases, effective April 1, 1996, pursuant to the restoration order issued on May 7, 1997.” (Id. at 110; see also Graham Ct. Owners Corp. v Allen, NYLJ, Mar. 19, 1996 at 25, col 2 [App Term, 1st Dept 1996] [rent reduction order did not preclude landlord from collecting permissible vacancy increases and allowances].)
DHCR Operational Bulletin 95-1 issued August 21, 1994 also addresses this issue, and provides that while MCI increases may be applied for during the period a rent reduction order is in effect, the owner may not collect such increases, if collection of same had not commenced prior to the issuance of the order, until a rent restoration order is issued.
Similarly, DHCR Policy Statement 90-8 issued on March 23, 1990 provides:
*880 “Where there is a DHCR order in effect determining a failure to maintain services in an individual apartment(s), and an MCI rent increase is approved, the MCI order will be issued for the entire building granting the rent increase. However, until a restoration order is issued for the individual apartment(s), the owner is barred from collecting the prospective increase and any retroactive increase is forfeited for the period during which a rent reduction order was in effect.”
Finally, there has been much litigation about rent reduction orders in the context of the statute of limitations, and the court looks to those cases for guidance on the issue presented by the motion. In Matter of Cintron v Calogero (15 NY3d 347 [2010]), the Court of Appeals addressed the issue of whether and to what extent a rent reduction order could be considered when issued prior to the four-year statute of limitations for rent overcharge claims. The Court concluded that examination of the rent history beyond four years was not precluded where rent reduction orders had been issued. In a brief submitted by DHCR on said appeal the agency argued:
“a DHCR rent reduction order reduces the legal regulated rent but does not fix the legal regulated rent at a particular amount. This is because the remedy in a services complaint is not an attack upon the legal regulated rent for the apartment, but rather, a temporary rollback and freeze of the amount being collected as the remedy for a failure to provide services. A rent reduction order issued for failure to provide required services in a rent stabilized apartment does not take cognizance of the amount of rent being charged or collected, or whether that amount is proper; it merely provides for a percentage by which the rent (whatever that rent may be) shall be reduced until the service is restored — at which time the full rent is to be restored prospectively” (brief for respondent-respondent, available at 2010 WL 4109296, *28-29 [Mar. 24, 2010]).
Generally speaking, these decisions seem to imply that only the collectibility of interim increases is affected by a rent reduction order, and that same only applies until the DHCR issues a rent restoration order. For example, in Thelma Realty Co. v Harvey (190 Misc 2d 303 [2001]), the court held that “a DHCR *881 rent reduction order imposes a continuing obligation upon an owner to reduce the rent and to refrain from collecting increases until he obtains an order restoring the rent” (id. at 305-306, citing Hollis Realty Co. v Glover, 179 Misc 2d 522 [1999]; see also 1397 E. 2nd LLC v Jackson, 10 Misc 3d 135[A], 2005 NY Slip Op 52124[U] [2005] [holding absence of rent restoration order bars landlord from collecting any guideline increase]).
There are some contradictions between the plain words of the statute and the case law. As noted above, section 2523.4 (a) (1) of the Rent Stabilization Code provides that during the period a rent reduction order is in effect the owner may neither apply for nor collect any increases. However, the cases clearly hold that certain increases, such as for MCIs and IAIs, may be applied for, but not collected (see e.g. Matter of Avery v New York State Div. of Hous. & Community Renewal, 2 Misc 3d 1011 [A], 2004 NY Slip Op 50287[U] [2004]; Matter of Miller v New York State Div. of Hous. & Community Renewal, 1997 WL 34848836 [Sup Ct, NY County, Mar. 05, 1997, index No. 31266/94]).
In this case, petitioner did not apply for any increases. Presumably,[2] petitioner complied with its obligation to issue renewal leases, at the rate allowed by law, but refrained from seeking to collect said increases, until after DHCR issued an order restoring the rent.
Based on the foregoing, the court finds that a landlord can offer lease renewals during the period that a rent reduction order is in effect which, if accepted, raise the legal rent according to applicable guidelines increases, but that a landlord will forfeit the right to collect said increases until a rent restoration order is issued. At the time the rent restoration order is issued, the landlord may collect the legal rent pursuant to the applicable renewal leases and any other authorized increases in accordance with said order.
As such respondent’s motion for summary judgment is denied.

. At argument both parties agreed that the court could reach out to DHCR for assistance in interpreting said order. The court did speak with a DHCR attorney, who confirmed that the agency’s interpretation of such orders is that once rent is restored, the legal and collectible rent may include interim guidelines increases for the period between when the rent was frozen and when it was restored. While the court has considered this in rendering this decision, the decision is primarily based on the other legal authority cited herein.

. The details of what if any renewals were signed and what was charged and paid, along with other material facts, remain to be determined at trial.